Filed 2/21/23  In re S.B. CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | |
| MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.B.,<br><br>Defendant and Appellant. | F084825<br><br>(Super. Ct. No. MJP018577)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Madera County.  Thomas L. Bender, Judge.

Susan M. O'Brien, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Peña, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

L.A. (mother) and T.B. (father) are the parents of S.B. (born December 2019). Father appeals the juvenile court's order terminating his parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Father's sole contention on appeal is that the Madera County Department of Social Services (the department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about S.B.'s possible Indian ancestry and the department did not conduct a further inquiry after mother claimed membership in a tribe.[2] The department concedes that remand for further inquiry is necessary.

For the reasons discussed herein, we accept the department's concession. Consistent with our recent decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

## I.     Referral and Petition

On September 18, 2020, the department received a referral on behalf of S.B. because the family was staying at a paternal aunt's house, a known drug house. The family had recently moved to Madera County from Oklahoma and were homeless. The social worker made a safety plan with father that required the family to stay elsewhere. A few days later, father was pulled over and arrested for having methamphetamine in his possession and S.B. was later placed in protective custody. The department then conducted a child family team meeting in which both parents were present along with relative Mark H. and family friend Liz H. The parents stated they wanted S.B. placed with Liz, who had been father's foster mother when he was a minor.

On September 24, 2020, the department filed a petition pursuant to section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling). The petition contained an Indian Child Inquiry Attachment (ICWA-010(A)) form indicating the parents had refused to answer questions regarding Indian ancestry or sign Parental Notification of Indian Status (ICWA-020) forms.

## II.     Combined Detention and Jurisdiction

The detention report stated ICWA inquiries had not been conducted as the parents would not cooperate with the department. They would not answer questions regarding Indian ancestry or sign ICWA-020 forms.

On September 28, 2020, the juvenile court held a detention hearing where both parents were present. The court inquired about their Indian ancestry. Mother stated she was a member of the Turtle Mountain Chippewa tribe in North Dakota (Turtle Mountain Chippewa tribe) and claimed S.B. was eligible for enrollment. She did not have her

---

[3]    Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

enrollment card with her, but stated she had an enrollment number.  Her stepmother who lived in North Dakota had her card.  The department noted that in prior dependency proceedings involving mother's two other children (half siblings to S.B.), ICWA was found not to apply.  The department stated it would look into why ICWA had been found not to apply in those proceedings.  Father denied Indian ancestry on his behalf.  The court found ICWA could apply and instructed the department to follow up with mother and send notice to the tribe.[4]  The court then addressed placement.  Mother wanted her cousin Sadie H. assessed for placement and father wanted paternal aunt Tina B. and Liz assessed.  The court continued the hearing for a combined contested detention and jurisdiction hearing.

On September 29, 2020, mother filed an ICWA-020 form indicating she was or could be a member of the Turtle Mountain Chippewa tribe.

The jurisdiction report stated ICWA could apply because mother had reported Indian ancestry with the Turtle Mountain Chippewa tribe and S.B. could be eligible for membership.  However, the department noted that in prior dependency proceedings involving mother's two other children, the juvenile court found ICWA did not apply.  As a result of those prior findings, the department recommended the court find ICWA not apply in the current proceedings.

An addendum report outlined the ICWA findings in mother's prior dependency cases.  During those proceedings, the department noticed and contacted the "Northern Band of Chippewa Indians."  The tribal coordinator reported mother and S.B.'s two half siblings were not eligible for enrollment but stated they could be distant

---

**4**     We note that the Recommended Advisements, Inquiries, Findings & Orders had a box checked stating:  "The court finds that there is insufficient information indicating or suggesting that the child is an Indian child.  Therefore, the Indian Child Welfare Act does not apply and no notice is required pursuant to the Indian Child Welfare Act."  However, the minute order correctly reflects the juvenile court's oral pronouncement that ICWA could apply.

descendants. Thereafter, the juvenile court found ICWA did not apply. As a result of those prior findings, the department again recommended the court find ICWA not apply in the current proceedings.

On January 5, 2021, at the combined detention and jurisdiction hearing, the juvenile court sustained the petition, found ICWA did not apply, and set a disposition hearing.

## III. Disposition

In the disposition report, the department recommended the juvenile court find ICWA not apply.

On March 2, 2021, at the disposition hearing, the juvenile court again found ICWA did not apply. Mother was bypassed for reunification services and the court denied a de facto parent request made by Sadie, who was present at the hearing.

## IV. Six-Month Review

The six-month review report stated the juvenile court had already found ICWA did not apply.

On November 1, 2021, the six-month review hearing commenced. Father was present and requested that S.B. be placed with a relative, specifically naming his cousin Mona O. S.B. had been previously placed with Mona, but was removed at father's request. At the conclusion of the review hearing, father's reunification services were terminated and a section 366.26 hearing was set.[5]

---

[5] Father filed an extraordinary writ from the juvenile court's orders terminating his reunification services and setting a section 366.26 hearing, arguing the department failed to provide him reasonable reunification services. On February 3, 2022, this court denied his petition. (*Thomas B. v. Superior Court* (February 3, 2022, F083539)[nonpub. opn.].)

**V.      Section 366.26**

The section 366.26 report stated S.B. was now placed with Sadie.  The report reiterated that the juvenile court previously found ICWA did not apply.

On July 21, 2022, the juvenile court held a section 366.26 hearing and terminated parental rights.

On August 18, 2022, father filed a notice of appeal.

## DISCUSSION

**I.      ICWA**

### A.      Background

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations].  'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.]  The Legislature's 'primary objective … was to *increase* compliance with ICWA.  California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.]  Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions

6.

Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### B.  Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

(§ 224.2, subd. (b).)  Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable."  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).)  "Further inquiry 'includes, but is not limited to, all of the following:  [¶]  (A) Interviewing the parents, Indian custodian, and extended family members[;]  [¶]  (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and]  [¶]  (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' "  (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)."  (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).)  "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

## II. Analysis

### A. Summary of ICWA Inquiry

The record reflects that at the detention hearing, mother reported she was a member of the Turtle Mountain Chippewa tribe and that S.B. was eligible for enrollment. Mother claimed she had an enrollment number, but that her stepmother was in possession of her enrollment card. The department informed the juvenile court that in mother's previous dependency case involving S.B.'s two half siblings, ICWA was found inapplicable. Nevertheless, the court ordered the department to send notice to the tribe. At that same hearing, father denied Indian ancestry. The next day, mother filed an ICWA-020 form again claiming Indian ancestry with the Turtle Mountain Chippewa tribe. Although the court explicitly ordered the department to send notice to the tribe despite the prior findings in mother's other dependency cases, there is no indication the department ever did so.

Neither is there any evidence that ICWA inquiries were made with any family members. S.B. had been placed with at least three relatives—mother's cousin Sadie, father's cousin Mona, and father's cousin Eric B. Additionally, father had provided the names of paternal aunt Tina and his former foster mother Liz for placement purposes. The department assessed Tina, who was unable to pass the emergency placement process, and Liz and relative Mark participated in a child family team meeting. As mentioned, although the department was in contact with these individuals, the record does not reflect they were inquired of.

Recently, in *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that our Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.)

Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

### B.     Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.)  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid.*)  Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.]  The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.]  The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation].  '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within

the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.)  Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion.  (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.]  But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " [Citations.]  [¶]  While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.]  Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C. The Department and Juvenile Court Erred

#### 1. Duties

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to

inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

Moreover, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the court[ or the department] has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or the department] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[6]

---

**6** All further references to rules are to the California Rules of Court.

12.

### 2. Juvenile Court's Finding Unsupported by Substantial Evidence

Here, the department inquired only of mother and father and failed to conduct further inquiry as ordered by the juvenile court after mother gave reason to believe S.B. may have Indian ancestry, which fell short of complying with the plain language of section 224.2, subdivisions (b) and (e). "We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child. However, '[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function.' [Citation.] [County welfare departments] and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once [county welfare departments] provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 619–620, fn. omitted.)

"[T]he law demands more than merely inquiring of [m]other and [f]ather" (*K.H.*, *supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)), a point the department does not dispute. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the [department's] inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.)

13.

Under these circumstances, the department did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b) & (e).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### D. Prejudice

"Where, as here, the deficiency lies with [a department's] duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[7] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant

---

**7**       *People v. Watson* (1956) 46 Cal.2d 818, 836.

harm.  [Citation.]  In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect.”  (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, “ ‘ICWA compliance presents a unique situation ….’ ”  (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.)  “ICWA is not directed at reaching, or protecting, a specific outcome on the merits.”  (*Id*. at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.)  Rather, “ ‘[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings’ [citation], and an adequate initial inquiry facilitates the information gathering upon which the court’s ICWA determination will rest.”  (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.)  Yet, “while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal.”  (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.)  Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court.  (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.)

“Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously.”  (*K.H.*, *supra*, 84 Cal.App.5th at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.)  “Thus, ‘the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis].  The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so

15.

that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical' " (*E.C.*, at p. 154, quoting *K.H.*, at p. 591), and " 'requiring adequacy as the law directs "is generally the only meaningful[] way to safeguard the statutory right[s]" as intended under ICWA and related California law [citation]. If this step is disregarded, the protection Congress and our state Legislature intended to afford tribes goes unrealized.' " (*E.C.*, at p. 154, quoting *K.H.*, at p. 609.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 155.) Here, the department's inquiry, limited only to mother and father, " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, at p. 156, quoting *K.H.*, at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The juvenile court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in

compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [S.B.,]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. 157, quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order terminating parental rights is affirmed.